UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED

2026 MAR 25  PM 3:29

DISTRICT OF MASS.

JOSHUA JACKSON,

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES LLC,

Defendant.

**Civil case number:**

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is an action for damages under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Defendant Equifax Information Services LLC prepared, maintained, and published consumer reports concerning Plaintiff Joshua Jackson that contained materially incomplete revolving-account tradeline data. After Plaintiff disputed the incomplete reporting in writing, Equifax failed to conduct a reasonable reinvestigation and continued to publish the deficient information to third-party report users. Plaintiff seeks actual damages, statutory damages, punitive damages, and costs of suit.

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and subject-matter jurisdiction under 15 U.S.C. § 1681p, which provides exclusive federal jurisdiction for FCRA claims.

- 1 -

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events giving rise to these claims -- including the preparation and distribution of inaccurate and incomplete consumer reports about Plaintiff -- occurred in this District.

## PARTIES

4. Plaintiff Joshua Jackson is a natural person residing at 91 Skyline Dr Apt 10, Braintree, Massachusetts 02184. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant Equifax Information Services LLC is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and regularly assembles, evaluates, and furnishes consumer reports for monetary fees in interstate commerce.

## FACTUAL ALLEGATIONS

### A. Background and Equifax's Reporting Obligations

6. The FCRA requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of all information in consumer reports. 15 U.S.C. § 1681e(b). The statute covers both inaccurate information and materially incomplete information that creates a misleading impression. Plaintiff's claims rest on both grounds.

7. The Consumer Data Industry Association's Metro 2 Format for Credit Reporting ("Metro 2") is the industry-standard data format used by furnishers and consumer reporting agencies for the submission and publication of tradeline data. Metro 2 identifies Terms Duration, Terms Frequency, Scheduled Monthly Payment Amount, Actual Payment

Amount, Current Balance, Amount Past Due, Credit Limit, and Highest Credit as core base-segment reporting fields that must be populated for an account record to be complete and coherent. For revolving credit card accounts specifically, Metro 2 requires that the Terms Duration field be reported as "REV."

### B. Equifax's Incomplete Reporting of the Digital FCU Tradeline

8. On March 9, 2026, Plaintiff obtained his Equifax consumer disclosure, confirmation number 6068541346.

9. Plaintiff reviewed the disclosure in connection with his efforts to qualify for credit and to monitor the accuracy of information that third-party lenders and other report users were receiving about him.

10. The disclosure reflected a tradeline for DIGITAL FCU account ending in 3141 (the "Digital FCU Account"). Equifax reported the Digital FCU Account as a credit card with the following information: status "Pays As Agreed," credit limit $12,000, high credit $11,998, current balance $11,938, terms frequency monthly, scheduled monthly payment amount $210, and actual payment amount $173.

11. The Digital FCU Account tradeline also reflected Metro 2 narrative codes including code 002 (credit card) and code 233 (indicating the High Credit column reflects the credit limit), confirming the account's revolving, card-type character.

12. Despite this, Equifax published the Digital FCU Account tradeline with the Terms Duration field left blank. Under Metro 2, revolving credit card accounts must carry a Terms Duration value of "REV." The omission was facially inconsistent with the other data Equifax published for the same account.

13. The missing Terms Duration field was material. The Digital FCU Account carried a balance of $11,938 against a $12,000 credit limit -- a utilization rate of approximately 99.5 percent. Any lender or report user reviewing this tradeline would assess Plaintiff's revolving utilization and repayment obligations, and the blank Terms Duration field, in combination with the near-limit balance, created a materially misleading picture of the account's terms and nature.

### C. Equifax's Incomplete Reporting of the SYNCB/Car Care Tradeline

14. The same disclosure reflected a tradeline for SYNCB/CAR CARE account ending in 6000 (the "SYNCB Account"). Equifax reported the SYNCB Account as a card-type account with a $1,500 credit limit.

15. Equifax published the SYNCB Account with multiple material Metro 2 base-segment fields left blank: scheduled monthly payment amount, actual payment amount, date of last payment, date closed, and Terms Duration. The result was a tradeline that presented an account status without the payment history and account-lifecycle data that lenders and report users rely upon to evaluate an obligation.

### D. Plaintiff's Dispute and Equifax's Failure to Reinvestigate

16. On or about December 5th 2026 , Plaintiff submitted a written dispute to Equifax by [certified mail / online portal / other method], disputing the completeness and accuracy of both the Digital FCU Account and the SYNCB Account tradelines.

17. In his dispute, Plaintiff identified each tradeline by account name and the last four digits of the account number, described the specific Metro 2 fields that were blank or incomplete, and requested that Equifax correct or delete the affected tradelines. Plaintiff's

dispute provided sufficient identifying information for Equifax to locate the disputed accounts in his file and investigate the reported deficiencies.

18. Equifax received Plaintiff's dispute.

19. The FCRA required Equifax, within thirty days of receiving Plaintiff's dispute, to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, incomplete, or unverifiable, and to delete or modify any such information. 15 U.S.C. § 1681i(a)(1)(A).

20. Equifax failed to conduct a reasonable reinvestigation of the disputed tradelines within thirty days. Instead, Equifax [describe Equifax's response -- e.g., sent a form response, verified the information without contacting the furnisher, or failed to respond at all].

21. Equifax failed to delete or modify the incomplete Digital FCU Account or SYNCB Account tradelines. Both tradelines continued to appear in Plaintiff's Equifax consumer file with the same material fields blank.

22. Equifax continued to furnish consumer reports concerning Plaintiff to third-party lenders and other report users after the thirty-day reinvestigation period expired, and those reports contained the disputed, incomplete tradeline data.

### E. Harm to Plaintiff

23. Equifax disseminated Plaintiff's consumer reports -- containing the materially incomplete revolving-account tradeline data described above -- to third-party lenders, creditors, and other report users. Those report users received and relied upon the incomplete data in evaluating Plaintiff's creditworthiness.

24. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete, particularized harm, including [one or more of the following, to be confirmed]: denial of

credit, offer of credit on less favorable terms, a higher interest rate, or a reduced credit limit on or about _____.

25. Plaintiff also suffered non-economic actual damages, including emotional distress, anxiety, frustration, lack of sleep, and interference with his normal daily activities caused by his efforts to monitor, dispute, and follow up on the incomplete tradelines.

26. Plaintiff spent substantial time -- including time gathering dispute documentation, preparing correspondence, monitoring his credit file, and tracking Equifax's reinvestigation -- that he would not have spent but for Equifax's failure to maintain a complete and accurate report.

## APPLICABLE LEGAL STANDARDS

27. Section 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The First Circuit has held that these standard covers both outright inaccuracies and incomplete information that gives a misleading impression. Chiang v. Verizon New England Inc., 595 F.3d 26, 37 (1st Cir. 2010) (a report is inaccurate if it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions").

28. Section 1681i(a) requires a consumer reporting agency to conduct a "reasonable reinvestigation" of disputed information within thirty days of receiving a consumer's dispute and to delete or modify information that is inaccurate, incomplete, or cannot be verified. 15 U.S.C. § 1681i(a)(1)(A). The statutory duty is triggered by a dispute as to "completeness" as well as accuracy. Id.

- 6 -

29. Willful noncompliance under 15 U.S.C. § 1681n includes conduct that is "knowingly and intentionally" in violation of the FCRA as well as conduct that is recklessly indifferent to that risk. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007). Reckless disregard exists where the defendant's reading of the FCRA "was not only wrong but objectively unreasonable." Id. at 70.

30. Article III standing is satisfied where, as here, Equifax disseminated inaccurate or incomplete consumer reports about Plaintiff to third-party report users. TransUnion LLC v. Ramirez, 594 U.S. 413, 432 (2021) (plaintiffs who had their reports disseminated to third parties suffered a concrete harm analogous to the tort of defamation).

## COUNT I

### Negligent Noncompliance with the FCRA

### 15 U.S.C. §§ 1681e(b), 1681i(a), 1681o

31. Plaintiff incorporates by reference Paragraphs 1 through 30.

32. Equifax is a consumer reporting agency that prepared and published consumer reports concerning Plaintiff.

33. Section 1681e(b) required Equifax to follow reasonable procedures to assure maximum possible accuracy of all information in Plaintiff's consumer reports, including the Digital FCU Account and SYNCB Account tradelines.

34. Equifax negligently failed to follow reasonable procedures to assure maximum possible accuracy. Equifax published both tradelines with material Metro 2 base-segment fields blank -- omissions that a reasonable compliance procedure would have flagged before the reports were issued to third parties.

35. Section 1681i(a) required Equifax, after receiving Plaintiff's written dispute, to conduct a reasonable reinvestigation of the disputed tradelines within thirty days and to delete or modify any information found to be inaccurate, incomplete, or unverifiable.

36. Equifax negligently failed to conduct a reasonable reinvestigation. Equifax failed to correct or delete the incomplete Digital FCU Account and SYNCB Account tradelines within the thirty-day statutory period or at any time thereafter.

37. As a direct and proximate result of Equifax's negligent noncompliance, Plaintiff suffered actual damages, including emotional distress, anxiety, lost sleep, interference with normal daily activities, lost time, and credit-related harm, as described in Paragraphs 23 through 26.

38. Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs of suit pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT II

### Willful Noncompliance with the FCRA

### 15 U.S.C. §§ 1681e(b), 1681i(a), 1681n

39. Plaintiff incorporates by reference Paragraphs 1 through 38.

40. Equifax's noncompliance with 15 U.S.C. §§ 1681e(b) and 1681i(a) was willful within the meaning of Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).

41. Equifax knew or recklessly disregarded that the FCRA's maximum-possible-accuracy obligation applies to materially incomplete tradeline data, not only to outright inaccuracies. Publishing high-limit revolving card tradelines with required Metro 2 fields left blank was an objectively unreasonable compliance posture.

42. Equifax knew or recklessly disregarded that 15 U.S.C. § 1681i(a) expressly covers disputes about the completeness of reported information. Despite this, Equifax failed to conduct a genuine reinvestigation of Plaintiff's dispute and continued to publish the deficient tradelines.

43. Equifax's willful noncompliance is further evidenced by its systemic failure to implement adequate quality-control procedures to detect and correct blank Metro 2 base-segment fields in consumer reports before those reports are issued to third parties. The Consumer Financial Protection Bureau's January 2025 lawsuit against Experian, CFPB v. Experian Information Solutions, Inc., No. 8:25-cv-00024 (C.D. Cal. filed Jan. 7, 2025), illustrates the systemic nature of quality-control failures at national consumer reporting agencies and the regulatory environment in which Equifax operates, demonstrating that the risk of incomplete reporting was well known to large consumer reporting agencies.

44. As a result of Equifax's willful noncompliance, Plaintiff is entitled to actual damages or statutory damages in an amount not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs of suit pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Jackson respectfully requests that this Court enter judgment against Defendant Equifax Information Services LLC as follows:

A. Actual damages in an amount to be determined at trial, including damages for emotional distress, anxiety, lost sleep, interference with daily activities, lost time, and credit-related harm, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

B. Statutory damages of not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

C. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

D. Costs of suit pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

E. Prejudgment and post judgment interest to the extent permitted by law; and

F. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: ___3 - 26 - 26___

_____

Joshua Jackson

91 Skyline Dr Apt 10

Braintree, MA 02184

Plaintiff, Pro Se